**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALONZO DEMPSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 04 C 53 |
| v. ) | |
| ) | |
| GENERAL ELECTRIC CO. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This negligence case is before the court for ruling on defendant General Electric Co.'s motion for summary judgment. For the reasons that follow, the motion for summary judgment is denied.

**BACKGROUND**[1]

In this diversity case,[2] plaintiff Alonzo Dempsey ("Dempsey") has sued defendant General Electric Co. ("GE") for negligence, seeking to recover for injuries he sustained on July 7, 2003 while cleaning a reactor at GE's plastics plant in Ottawa, Illinois (the "Ottawa Plant").

---

[1]  The following facts are undisputed unless otherwise noted.

[2]  GE is a New York corporation with its principal place of business in Connecticut and at least one plant in Illinois. Dempsey is not a citizen of Illinois, New York or Connecticut. (It is the court's understanding that Dempsey is an Indiana citizen and resident, but that fact is not set forth in the Complaint, Notice of Removal, or Local Rule 56.1 Statements of Undisputed Facts.)

At the time of the incident, Dempsey was an employee and agent of Hydrotech, Inc. ("HTI"), a company that GE engaged to perform various tasks at the Ottawa Plant, including high-pressure water blasting. On July 7, 2003, Dempsey and other HTI employees came to the Ottawa Plant to clean certain tanks or reactors that GE used in its production of plastics.

Dempsey was working inside of a reactor (identified as reactor number 2) when he was injured. The reactor is a large piece of stainless steel machinery that has three blades connected to a shaft.[3] The agitator blades, which are used for mixing plastic and do not have sharp edges, are approximately 18 inches from the bottom of the reactor.[4] Dempsey climbed down a ladder into the reactor with a metal, high-pressure water gun that was hooked up to a high-pressure pump; he was wearing an oxygen mask, oxygen tank and a life line hooked up to a body harness. The water gun Dempsey was using to clean the inside of the reactor exerted 10,000 psi of pressure when the trigger was engaged. As he was water blasting

---

[3] The exact dimensions of the reactor are unclear. According to Dempsey's recollection, the reactor is 20-30 feet deep, whereas GE's witnesses described the reactor as being either 10-12 feet in diameter and depth or 7-8 feet wide and 8-9 feet deep. (See Dempsey Dep. at 51:22-52:8; Mary Lynn Hall Dep. at 24:18-25:1-4; Susan Walker Dep. at 11:5-17.)

[4] Although paragraph 9 of Dempsey's Local Rule 56.1 Statement of Material Facts states that the blades were approximately 8 inches from the bottom, the deponent whose testimony provides the basis for that fact testified that the blades were 18 inches, not 8 inches, from the bottom. Dempsey's reference to "8" inches evidently is a typographical error.
There is an additional point regarding Dempsey's Local Rule 56.1 Statement of Material Facts filed on August 18, 2005 (as opposed to subsequent Local Rule 56.1 submissions). Because GE failed to respond to that Local Rule 56.1 Statement, all properly supported facts in Dempsey's submission are deemed admitted. See N.D. Ill. L.R. 56.1. Not all of Dempsey's statements of fact were properly supported, however, nor are they all relevant to a ruling on the motion for summary judgment. The court will discuss only those facts that are relevant.

the reactor, he noticed that his line (his life line, water hose, or both) was getting wrapped around the agitator blades. Additionally, the floor of the reactor was slippery from the water and the plastic material he was blasting off the reactor walls. According to Dempsey, as he slipped back, he noticed that the agitator blades had begun to rotate. The rotating blades pulled the water gun in his hand (because his line was wrapped around the blades), which jerked him backwards and caused him to engage the trigger on the water gun. The powerful water shot into and cut Dempsey's hand, penetrating along his little finger and exiting near his thumb.[5]

Dempsey subsequently sued GE, alleging that GE's negligence caused his injuries. (The specific basis for the negligence claim is discussed below.) GE has moved for summary judgment, arguing that Dempsey's negligence claim fails because GE did not owe him a duty of care as a matter of law and was not the proximate cause of his injury.

## DISCUSSION

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[5] This fact, based on Dempsey's deposition testimony, was not included in the undisputed facts submitted by the parties. We include this fact simply to explain the nature of the injury.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," there is no issue for trial. Anderson, 477 U.S. at 248.

**B.   Analysis**

To succeed on his common-law negligence claim against GE, Dempsey must prove: "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach." Deibert v. Bauer Bros. Constr. Co., Inc., 566 N.E.2d 239, 241 (Ill. 1990). "Unless a duty is owed, there is no negligence." Buchaklian v . Lake County Family Young Men's Christian Assoc., 732 N.E.2d 596, 599 (Ill. App. Ct. 2000) (citation and internal quotation marks omitted). The two issues critical to resolving the motion for

summary judgment are: 1) whether the court can conclude as a
matter of law that GE did not owe Dempsey a duty of care under
§ 343 and § 343A of the Restatement (Second) of Torts, and
(2) whether there is a genuine issue of material fact regarding
the proximate cause of Dempsey's injury.[6]  We address these
issues in turn below.

### 1. GE's Failure to Lock Down Reactor Number 2 is Not Relevant to Dempsey's Negligence Claim

Before examining those issues, however, the court first
explains why another issue raised by the parties is not relevant
to Dempsey's negligence claim.  In his complaint, Dempsey alleges
that GE owed him a duty of care, which it breached by (a) failing
to lock down reactor number 2 to prevent the agitator blades from
rotating while being cleaned; (b) failing to discover that

---

[6] Some background regarding the evolution of the parties' positions is
warranted.  In moving for summary judgment, GE originally framed the issue as
whether it owed Dempsey a duty under § 414 of the Restatement (Second) of Torts.
As a general rule, a principal who employs an independent contractor is not
liable for the independent contractor's acts or omissions because the principal
typically does not supervise the details of the independent contractor's work.
Martens v. MCL Constr. Corp., 807 N.E.2d 480, 488 (Ill. App. Ct. 2004).  There
is an exception to that general rule set forth in § 414 of the Restatement
(Second) of Torts under which a principal who retains control of an independent
contractor may be liable for negligence.  Restatement (Second) of Torts § 414
(1965); Larson v. Commonwealth Edison Co., 211 N.E. 2d 247, 252-253 (1965)
(recognizing § 414 as accurate expression of Illinois law).  As it turns out,
however, § 414 is not the issue.  In responding to GE's motion for summary
judgment, Dempsey conceded that GE did not owe him a duty under § 414, arguing
instead that the question is whether GE owed him a duty under § 343 of the
Restatement (Second) of Torts regarding the duties a possessor of land owes to
invitees.  GE replied that (1) it owed no duty under § 343 because any danger
presented by the agitator blades was open and obvious to Dempsey, (2) none of the
exceptions to the open-and-obvious doctrine apply to impose a duty on GE, and (3)
Dempsey lacked evidence that any act or omission of GE was the proximate cause
of his injury.  Because GE raised certain issues for the first time in its reply
brief, the court ordered supplemental briefing.  (See 2.14.06 Minute Order.)

reactor number 2 was not locked down; (c) failing to warn Dempsey
that reactor number 2 was not locked down; and (d) authorizing
Dempsey to enter reactor number 2 when GE knew or should have
known that reactor number 2 was not locked down. (See Compl.
¶ 7.)  It is undisputed that reactor number 2 was not locked
down.[7]  However, as it turns out, the failure to lock down
reactor number 2 is not relevant.  Locking down the reactor
essentially means cutting off the power. (See, e.g., Susan
Walker Dep. at 27:1-11.)  But even if the reactor were locked
down, the agitator blades still could be moved manually if force
were applied.[8]  In fact, it is undisputed that the force of the
water used during the water blasting could move the agitator
blades even if the reactor were locked down.  Furthermore, there
is no evidence in the record that the agitator blades began to
turn because the reactor was turned on.[9]  It is therefore
immaterial that GE neither locked down reactor number 2 nor
informed Dempsey that it was not locked down: the failure to lock
down the reactor did not cause Dempsey's injury.

---

[7]  The parties dispute whether Dempsey should have been cleaning reactor
number 2 at all, and whether anyone from GE authorized him to enter that reactor.

[8]  Locking the reactor down is like taking the glass jar of an electric
blender off of the base to ensure the blender cannot be turned on. (See Allen
Sather Dep. at 21:24-22:4.)  Even when the power source is cut off, the agitator
blades in the reactor will turn if force is applied just as the mixing blades in
the glass jar of the blender will turn if force is applied.

[9]  The parties confirmed this fact in supplemental briefing ordered by the
court.

Perhaps recognizing this flaw, in his sur-response brief Dempsey shifts the focus of his liability theory. Rather than continuing to focus on the fact that reactor number 2 was not locked down, Dempsey instead argues that GE had a duty to notify him that the agitator blades could move while he was in the reactor.[10] We will concentrate on this modified theory in ruling on the motion for summary judgment.

### 2. Duty of Care

---

[10] According to Dempsey, his complaint should be construed as alleging that GE "should have told Plaintiff that the agitator blades could move when the reactor was locked-out, should have fixed the reactor to prevent the blades from rotating when the reactor was locked-out, or should not have allowed Plaintiff to enter the reactor." (Pl.'s Sur-Resp. at 7.) Alternatively, he asks the court to grant him leave to amend the negligence allegations to conform to the evidence in the case. It would not be reasonable to construe the complaint as broadly as Dempsey suggests — no fair reading of the complaint, as written, put GE on notice that Dempsey was challenging the fact that the blades could move even when the reactor was locked down. Amendment, on the other hand, remains an option under Rule 15 of the Federal Rules of Civil Procedure. The court will allow Dempsey to amend his complaint to allege that GE had a duty to inform him that the agitator blades could move while he was in the reactor, and will consider that theory in ruling on the pending motion for summary judgment.

However, the court will not consider Dempsey's theory that GE should have fixed the reactor to prevent the blades from rotating when the reactor was locked down. Asserting that GE should have "fixed" the reactor suggests that it was broken, yet there is no evidence before the court indicating that the reactor was not functioning as it was supposed to at the time of the accident. Further, it is undisputed that at the time of the accident, there was no way to prevent the agitator blades from moving if force was applied. (See Def.'s Supp. L.R. 56.1 Statement of Material Facts ¶ 27, deemed admitted pursuant to N.D. Ill. L.R. 56.1 because Dempsey offers no specific references to affidavits, parts of the record, or other supporting materials to refute it.) Additionally, Dempsey's theory depends on inadmissible evidence. There is testimony that after Dempsey's accident, GE created a tool that prevents movement of the agitator blades when the reactor is locked down. That testimony clearly relates to a subsequent remedial measure, and thus is inadmissible under Rule 407 of the Federal Rules of Evidence. Because the testimony would not be admissible at trial, the court must also disregard it in ruling on the motion for summary judgment. Stinnett v. Iron Works Gym/Exec. Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

The first issue is whether GE correctly asserts that as a matter of law it owed no duty of care to Dempsey under §§ 343 and 343A of the Restatement (Second) of Torts.

Sections 343 and 343A, which Illinois courts have adopted, set forth the standards regarding the duty that property owners[11] owe to invitees such as the employees of independent contractors who are doing work on property in the interest of the property owner. Deibert, 566 N.E. 2d at 241; Longnecker v. Ill. Power Co., 381 N.E. 2d 709, 713 (Ill. App. Ct. 1978) (business invitees include independent contractors and their employees). Under both § 343 and the common law, a property owner generally "owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition." Deibert, 566 N.E.2d at 242. Section 343 thus provides that a property owner is subject to liability for injuries to an invitee caused by a condition of its property only if the condition presents an unreasonable risk of harm to invitees and the property owner (a) knows of or by the exercise of reasonable care would discover the condition, (b) "should expect that [the invitee] will not discover or realize the danger, or will fail to protect [himself] against it," and (c) fails to protect the invitee against the condition. Id. at 241 (citing Restatement (Second) of Torts § 343, at 215-

_____

[11]/ Sections 343 and 343A refer to the duties of "possessors of property." For purposes of this opinion, the term "property owner" is used synonymously with the term "possessor of property."

216 (1965)).  Section 343 must be read in conjunction with the

open-and-obvious doctrine set forth in § 343A, however.

Restatement (Second) of Torts § 343, comment a, at 216 (1965).

The open-and-obvious doctrine provides that a property owner is

not liable to an invitee for any physical injuries caused by a

condition on the land if the danger "is known or obvious to [the

invitee], unless the [property owner] should anticipate the harm

despite such knowledge or obviousness."[12]  Id. at § 343A(1), at

218.  Accordingly, as a general rule under Illinois law, "'the

owner or occupier may reasonably assume that invitees will

exercise reasonable care for their own safety, and that

ordinarily he need not take precautions against dangers which are

known to the visitor or so obvious that the visitor may be

expected to discover them.'"  Mason v. Ashland Exploration, Inc.,

965 F. 2d 1421, 1425-26 (7th Cir. 1992) (quoting Ward v. K Mart

Corp., 554 N.E.2d 223, 231 (Ill. 1990)).  If the danger is open

and obvious, a property owner is not subject to liability unless

one of the exceptions to the open-and-obvious doctrine applies.

See Clifford v. Wharton Bus. Group, L.L.C., 817 N.E.2d 1207, 1215

(Ill. App. Ct. 2004).

---

[12]/  "Known" means both knowledge of the existence of the condition itself
as well as appreciation of the danger involved.  Restatement (Second) of Torts
§ 343A, comment b.  "'Obvious' means that both the condition and the risk are
apparent to and would be recognized by a reasonable [person], in the position of
the visitor, exercising ordinary perception, intelligence, and judgment."  Id.,
comment b, at 219.

GE contends that it owed no duty of care to Dempsey as a
matter of law because any danger presented by the agitator blades
was open and obvious and no exception to the open-and-obvious
doctrine applies.  Dempsey, however, counters that whether the
danger was open and obvious is a question of fact to be
determined by the jury.  Additionally, Dempsey argues that even
if the danger presented by the agitator blades was open and
obvious, GE nevertheless owed him a duty of care because the
distraction exception to the open-and-obvious doctrine applies.[13]
Under the distraction exception, a property owner has a duty of
care to protect an invitee from an open-and-obvious danger if the
owner "'has reason to expect that the invitee's attention may be
distracted, so that he will not discover what is obvious, or will
forget what he has discovered, or fail to protect himself against
it.'"  Mason, 965 F.2d at 1426; Restatement (Second) of Torts
§ 343A, comment f, at 220.

As a general matter, "[w]hether a duty exists is a question
of law to be decided by the court, and if no duty exists there
can be no recovery."  Rangel v. Brookhaven Constructors, Inc.,
719 N.E.2d 174, 176 (Ill. App. Ct. 1999).  But in this case,
whether GE owed Dempsey a duty of care depends on whether the
danger presented by the agitator blades was open and obvious,

---

[13]/    The second exception to the open-and-obvious doctrine is the
deliberate encounter exception, see, e.g., Clifford, 817 N.E.2d at 1215 n. 4,
which there is no need to discuss because neither party suggests that it applies.

which typically is a question of fact.  <u>See</u> <u>Perri v. Furama</u>
<u>Rest., Inc.</u>, 781 N.E.2d 631, 637 (7th Cir. 2002) ("Whether a
condition presents an open and obvious danger . . . is a question
of fact.").  For the reasons that follow, the court concludes
that a genuine dispute of material fact exists regarding whether
the danger presented by the agitator blades was open and obvious,
thus precluding summary judgment on the issue of duty.  We
therefore need not resolve whether the distraction exception
applies.

GE and Dempsey disagree whether the danger presented by the
agitator blades was open and obvious.  The term "obvious" means
that "'both the condition and the risk are apparent to and would
be recognized by a reasonable [person], in the position of the
visitor, exercising ordinary perception, intelligence, and
judgment.'"  <u>Deibert</u>, 566 N.E.2d at 435 (quoting Restatement
(Second) of Torts § 343A, comment b, at 219 (1965)).  "[T]he
issue of whether a condition is obvious is determined by the
objective knowledge of a reasonable person, not the plaintiff's
subjective knowledge."  <u>Buchaklian</u>, 732 N.E.2d at 602 (internal
quotation marks omitted).  Thus, according to GE, the pertinent
issue is "whether a reasonable person with plaintiff's background
and experience would know and appreciate the potential for the
agitator blade to start moving when sprayed with 10,000 psi of
water . . . ."  (<u>Def.'s Sur-Reply</u> at 3.)  In GE's view, any

dangerous condition presented by the agitator blades would have

been open and obvious to a trained and experienced water blaster

like Dempsey.  In support of this argument, GE points out that

Dempsey had several years of experience with high-pressure water

blasting, and had received on the job training from a prior

employer as well as a demonstration from HTI regarding how to

properly perform water blasting.  Additionally, based on

testimony from its Safety Leader Allen Sather, GE asserts that

people who perform high-pressure water cleaning "understand that

they have to periodically move things, such as the agitator

blades, in order to be able to properly clean the machinery."[14]

(Def.'s Reply at 5.)  Thus, according to GE, it makes no

difference whether GE specifically informed[15] Dempsey or the

other HTI employees that the agitator blades could move because

they "would have been aware of this from their own training and

experience and the nature of their work."  (Id. at 6.)  In other

---

[14]/    This fact is based on Sather's deposition testimony, but GE's
characterization of the testimony strikes the court as broader than the actual
testimony.  Sather testified that people performing high-pressure water cleaning
"understand that they have to periodically move [pieces of equipment] when they
clean them from the outside."  (Sather Dep. at 24:7-12.)  Dempsey was cleaning
the reactor from the inside, not the outside.  More significantly, as explained
below, it does not automatically follow from Sather's testimony that a person
performing high-pressure water blasting understands that applying high-pressure
water to clean agitator blades may cause them to move.  That may be the case, but
Sather's testimony does not establish the fact.

[15]/    There is no evidence one way or the other whether GE specifically
informed HTI employees that the agitator blades could move regardless of whether
the reactor was locked down.  GE's Safety Leader testified that he does not know
whether such information was provided, (see Def.'s Resp. to Pl.'s L.R. 56.1
Statement of Material Facts ¶ 20), and there is no indication that either party
asked Dempsey or the other HTI employees whether such information was given.

words, "a reasonable person in the plaintiff's position would appreciate the risk of the [agitator blades] moving if a 10,000 pounds per square inch jet of water were sprayed upon it." (<u>Def.'s Sur-Reply</u> at 3.)

GE may very well be correct that the condition and risk presented by the agitator blades would be open and obvious to a reasonable person in Dempsey's position. The court, however, cannot reach that conclusion based on the present record. GE has provided only general information — *e.g.*, that Dempsey had experience doing high-pressure water blasting and had been instructed on how to perform the job properly. From that general information, the court cannot conclude that a person with Dempsey's experience and background would know that the force of the water pressure could cause the agitator blades to move. Although such a conclusion seems reasonable, it is not supported by specific evidence in the record. Likewise, the fact that a worker in the industry understands that he may have to move equipment like agitator blades to clean the machinery does not establish that he also understands that the force of water pressure could cause the agitator blades to move. It is undisputed that the force of the water used during the water blasting could move the agitator blades, but GE simply has not established that a reasonable person in Dempsey's position would

know that fact.[16]  That is the missing link, and without it the
court cannot conclude as a matter of law that the condition and
risk presented by the agitator blades was open and obvious, and
thus cannot rule that GE owed no duty to Dempsey under §§ 343 and
343A.[17]  We therefore deny the motion for summary judgment on the
duty of care issue.

### 2.    Proximate Cause

GE's alternate argument for summary judgment is that Dempsey
cannot establish that any act or omission of GE was the proximate
cause of Dempsey's injury.  The issue of proximate cause "is
ordinarily a question of fact determined by the trier of fact,"
but it "may be determined as a matter of law by the court where
the facts as alleged show that the plaintiff would never be
entitled to recover."  Abrams v. City of Chicago, 811 N.E. 2d
670, 674 (Ill. 2004).  GE's original proximate-cause argument was
that the failure to lock down reactor number 2 did not

---

[16]/    GE established the undisputed fact that the agitator blades would
move if force were applied even when the reactor was locked down through the
testimony of several GE employees.  But the fact that GE employees understood the
condition and risk presented by the agitator blades does not establish that a
reasonable visitor in Dempsey's position would also understand the condition and
risk.

[17]/    In the event GE establishes that Dempsey knew that the force of high-
pressure water could cause the agitator blades to move, or that a reasonable
person in Dempsey's position should have known that, the viability of Dempsey's
negligence claim is doubtful.  See Kurfess v. Austin Co., 840 F. Supp. 535, 538
(N.D. Ill. 1993) (property owner entitled to expect that plaintiff would take
responsibility to protect himself where plaintiff was hired to work around known
and obvious condition, was aware of the condition, knew the inherent dangers of
his job, and knew how to proceed safely).  To succeed, Dempsey would have to
establish that the distraction exception applies, which strikes the court as a
tenuous theory.

proximately cause of Dempsey's injury.  As explained above in section B.1, the court agrees and rules that as a matter of law, the failure to lock down reactor number 2 was not the proximate cause of Dempsey's injury.  Under Dempsey's modified theory of liability, however, the court finds that the proximate cause issue is a factual question that cannot be resolved on summary judgment.

In the event that GE owed a duty of care to warn Dempsey of the possibility that the agitator blades could move and breached that duty, the issue will be whether GE's failure to warn Dempsey proximately caused his injury.  There are two separate aspects of proximate cause: cause in fact and legal cause.  <u>Abrams</u>, 811 N.E. 2d at 674.

> A defendant's conduct is a "cause in fact" of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury.  A defendant's conduct is a material element and substantial factor in bringing about the injury if, absent that conduct, the injury would not have occurred.  "Legal cause," by contrast, is largely a question of foreseeability.  The relevant inquiry is whether "the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct.

<u>Id.</u> at 675 (internal citations omitted).  To establish that GE was the cause in fact of his injury, Dempsey presumably would have to demonstrate that if he had been told the blades could move, he would have acted differently and avoided injury. Although it is unclear whether Dempsey could make such a showing,

there is insufficient evidence in the record before the court to rule as a matter of law that Dempsey cannot recover.

Likewise, although GE argues that it was not the legal cause of Dempsey's injury because it could not reasonably foresee that plaintiff would injure himself in the manner he did if he were not warned that the agitator blade could move, we disagree that the foreseeability issue can be resolved on summary judgment.[18] Proximate cause issues typically present question of fact for the jury, see id. at 674, and GE has not persuaded the court that this case presents an exception.[19]

---

[18] To some extent, the foreseeability issue is intertwined with the question whether the danger presented by the agitator blades was open and obvious. For example, if the danger was open and obvious, GE may not be liable even if the injury was foreseeable because an invitee is expected to protect himself from an open and obvious danger. Similarly, if the danger was not open and obvious to Dempsey but his injury also was not foreseeable to GE, then GE would not be liable. However, if the danger was not open and obvious to Dempsey and the injury was foreseeable to GE, then GE may be liable.

[19] Aside from the merits, we note that GE did not raise the foreseeability argument until its sur-reply brief. It therefore has waived the argument for purposes of summary judgment. See Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997) (argument raised for first time in reply brief is waived).

## CONCLUSION

For the reasons explained above, defendant's motion for summary judgment is denied.


DATED:     March 21, 2006


ENTER:     _____
           John F. Grady, United States District Judge